All right, looks like we are ready to proceed with our next appeal. It's Charles Jr. Barber v. Denis Vilchez and Stephan Parker Schroep is here for Barber. And Mr. Schroep, are you ready to proceed? Court is in session. I am, Your Honor. Thank you. Oh, I'm sorry, Ms. Geddes. Court is in session. All right, we're in session and you may proceed, Mr. Schroep. Thank you, Your Honor. May it please the court, Stephan Schroep on behalf of the plaintiff appellant in this case, Mr. Charles Barber, I'd like to thank the court for providing Mr. Barber and myself an opportunity to present oral argument today on the two reasons why the district court's dismissal order in this case should be reversed and the case remanded for further proceedings. First, we ask that this court join the unanimous position of the other courts of appeals to consider this issue and hold that federal equitable tolling can apply to the period in which an incarcerated or detained individual diligently pursues administrative remedies that are mandatory under the Prison Litigation Reform Act or PLRA. Second, we ask that this court apply well-established precedent to conclude that the district court's separate dismissal of this action as an abuse of the judicial process without any findings to that effect was an abuse of Then would you agree that the best course for us would be to send this back to the district court to make the inquiry on equitable tolling in the first instance? On the question of whether or not equitable tolling applies based on the factual circumstances of this case, Your Honor, I'm saying assume for purposes of this question that we agree with you. I haven't talked to anybody else and this is just a question. But assume that we agree with you for purposes of this question that equitable tolling should apply. My question is, what next? I mean, it seems to me that if we were to do that, then we should probably send it back to the district court to examine the diligence and et cetera that would bear on the equitable tolling analysis as it applies in this case. And I'm asking you whether you agree that that's how we would proceed or whether you recommend something else. Certainly, Your Honor. Yes, we believe that there is sufficient evidence in the record to conclude both that Mr. Barber was diligent during the administrative exhaustion period here and that if equitable tolling is applied to that period, that his 2018 complaint was filed within the applicable statute of limitations. The record here reveals that Mr. Barber completed the administrative process and completed his steps of the administrative process well within the time limits contemplated by the Florida Administrative Code. And that process concluded on July 2nd, 2014. And so with those two facts apparent from the record, Mr. Barber's filing of the 2018 complaint on June 28th, 2018 fell within the four-year statute of limitations. That said, to Your Honor's point and to the extent that this court has questions about any of those factual circumstances or the conclusions that can be drawn from those, it would be within the court's discretion and appropriate to remand to the district court in the first instance to make findings on some of those issues. Yes, Your Honor. I have a question about whether Mr. Barber raised equitable tolling in the district court or not. As I understand the record, he didn't file any objections to the magistrate's R&R saying it was barred by the statute of limitations. He did file a pleading. I've forgotten the name of it. It had nothing to do with objections. But even in that pleading, if we were construed, there's no claim of equitable tolling. There's no challenge to the statute of limitations ruling. So can you address that first? Not the result from that, but the fact that he didn't file any objections to the R&R. That's correct, right? Your Honor, he filed a pleading that's called motion to change venue and reinstate complaint continuous or something similar to that, which was styled as an objection to the R&R, although I agree perhaps inartfully labeled. Yes, Your Honor. Well, I thought it was styled a motion to change venue. Motion to change venue and reinstate complaint, I believe, is the full title of that filing, Your Honor. Okay. But he didn't file an objection to the R&R. And even in that pleading he did file, he didn't raise equitable tolling. He didn't argue about the statute of limitations. Nothing happened on that. The whole matter is for the first time on appeal. Is that correct? I mean, you're a good lawyer and you raised it on appeal. Well, thank you, Your Honor. And certainly the direction from Judge Martin helped in that regard. What I would say that, I would say that the pleading that we've been discussing, the motion to change venue and reinstate complaint, I believe is best read as an objection to the R&R, given the posture following Mr. Barber's receipt of the R&R and the fact that it came between the district court's order adopting that and the filing of the R&R. So I do think it's fairly read. But it doesn't say equitable tolling or challenges statute of limitations ruling or anything? Not with the specificity that we've done on appeal, Your Honor. I think he does raise questions of tolling regarding, for instance, service in the 2016 action and the actions that he had taken to track down a workable address for Dr. Vilches. But no, I think I would agree with Your Honor that it does not raise equitable tolling and certainly not connected to the exhaustion of the administrative remedies process. Okay. So the whole thing is before us for the merits, but you can go ahead. You want to go ahead? I'm sorry. I want to make sure I understand where we are on the merits. You say every circuit has done this. I've looked at all those cases. You agree we look to Florida law for the statute of limitations, correct? Unless that law is consistent with federal goals. Yes, Your Honor. Right, right. Five of the circuits have ruled this way. In those circuits, the state law provided for equitable tolling for exhaustion administrative remedies. So there was no conflict between the federal purpose and the state law. Is that correct? I assume you understood the question correctly. I don't believe so, Your Honor. So in, for instance, the battle case. No, no, you're right. Yeah, I'm saying you said every circuit to look at it has ruled for equitable tolling. That's true. But most circuits, the state law priority provided, so it was part of the state law. Let me say it another way. In Florida, the state Florida law says there'll be equitable tolling for these situations. Not one of them is administrative remedies. And so what we have to do here is we have to override the state law and say that's let's let's try this with the state law prohibits equitable tolling for in Florida for exhaustion administrative remedies. So the issue here is whether the Florida law is inconsistent with federal policies. Would that be the issue? I agree that's the issue, Your Honor. I would just mention that I think in the in the four main cases that we've cited in our brief where the courts have adopted federal equitable tolling, I don't believe any of those decisions rested on state law. There are some other cases that we've not relied on as heavily in our brief, some out of the third, fifth, sixth and seventh circuits, which we haven't cited, where I do believe there is a hybrid approach or a state law approach. The courts look and, for instance, I believe let me let me ask you this, how many cases have a state law that prohibits it? I'm not saying you still don't win. It's just how we define what the issue is. The state law here prohibits equitable tolling. We have we the only case I could find that says, okay, the federal first purposes override that was the battle case. That's the only one that's really in point here. So I would say that the four cases that we have, we've cited in our brief, the main cases don't necessarily have prohibitions on the application of it, but simply don't provide for it. And I think that's the largely the case. That's a little different. We don't provide for it. Now we're having a direct prohibition. I think the statute in Virginia was was similar, in fact, more permissive than the statute that we have in Florida, where it did not. It said these are the circumstances that state law provides for tolling at the end of that tolling provision. It actually accounts for other extraordinary circumstances and kind of a blanket approach. And the court in battle concluded that even even with that language, it didn't contemplate equitable tolling. And so I would I would suggest to the court that the the remedies under under tolling exist only to the extent that the court provides them, I think, or to the extent the state legislature or the Florida courts provide those remedies. It's not the case that simply because equitable tolling may not be mentioned in the other cases, that that remedy was one that existed in the plaintiff's notice cases. Let's try it another way. You don't dispute the Florida precludes it. I don't, Your Honor. No. Okay. That's what we have to deal with. Florida precludes it. Yes, Your Honor, I agree that that's right. And to the second part of your honor's question, while the battle case, I think a thorough job of explaining the ways in which this no tolling rule is inconsistent with the federal goals of 1983. I, I would know that the Supreme Court in Hardin v. Straub considered a state law that provided for tolling. So the inverse of the situation that we have here, and the Supreme Court in that case concluded that the tolling provision furthered 1983 primary goals of compensation and deterrence. And so therefore, under the same reasoning, as explained in battle, I think it stands to reason that a state law that does not provide for tolling does not further the goals of compensation and deterrence, and in fact, is a dramatic obstacle to to those those primary goals. And and to reach the results you want, we have to acknowledge Florida law prohibits. And we also have to find Hardin overruled our precedent in Hawthorne. Don't we? We have precedent in Hawthorne. And I think we'd have to find Hardin in effect, overruled it to get to where you want us to go. I'm sorry, Your Honor, what's the precedents you're referring to there? I thought it was Hawthorne. Let me look. Let me go back. We've got an old case that I think Hawthorne v. Wells in 1985. If you're not prepared on that case, let Judge Rosenbaum ask her questions. I'll come back and say. Thank you, Your Honor. Okay. Counsel, with respect to whether equitable tolling applies, is that you agree that that's a purely legal issue? Or is it does it involve just the question of whether equitable tolling should apply? Not in a specific case? Is that a purely legal issue? Does it involve any kind of factual components? I think in certain circumstances, it will require factual determinations, Your Honor. Let me ask you something. You're talking about an individual application, right? I mean, we'll require it. For example, if we were to find it, that the rule that equitable tolling is applicable, or equitable tolling can be applicable. I think we'd say whether it's available. Is it available? Sure, I'll accept that. It's just whether it's available. So, using that, yes, so using that dichotomy, I'm sorry. Using that dichotomy, though, I do think the question of whether it's available is a legal question. And the question of whether it's applicable could be a question. You're right, and I apologize for not phrasing it accurately. So, since it's a purely legal question, don't we have the ability on appeal to consider it for the first time? Yes, you do. Yes, Your Honor. Let me ask you this also, though, related to that. I mean, I've been looking at this, it seems like this issue has come up a few times in our case law. And for whatever reason, we haven't, we've either assumed it could apply, and then decided the case and suggested it might apply. But we've never actually decided it, but it keeps, it seems to keep coming up. So, I guess I'm asking you, do you have any thoughts on, you know, whether this is the kind of thing that would be helpful to litigants in our, in our circuit, to establish a rule one way or the other, so they know what's going on? Yes, Your Honor, thank you. And you put on, I think, two of the main exceptions to the general doctrine that this court doesn't consider issues raised, you know, in the first instance on appeal. And I would note right off the bat that that rule is not jurisdictional, it's a rule of practice. And so, this court has established certain exceptions that apply, one of which, Your Honor noted, where it is a pure legal question. And we believe that the first half, at least, of the equitable tolling analysis is a pure legal question in this case, and could be answered by the court, even though it was raised for the first time on appeal. And in fact, one of the earliest cases where this court recognized that equitable that's the Leal case out of Georgia that's cited in our brief. The court did contemplate the possibility of answering that question in the first instance, and declined to in that circumstance. Now, the reason why this court should take a different tact than the court did in Leal is for the second reason that Your Honor noted, which is this issue continues to come up, and it continues to pose a substantial burden to a group of individuals who are subject to And so, in the interest of justice, and where the case has the potential to have an enormous impact or an importance of general impact, this court has also recognized an exception to the rule regarding considering issues raised for the first time on appeal. And so, I would suggest to the court that both of those rules, and the need for clarity on this issue throughout the circuit, counsel's in favor of answering at least the legal questions for the first time on appeal here, Your Honor. Okay. I got two more questions. As I understand this record, if you were gonna need a fact finding as to when he put something in the mail, because otherwise, he's actually one day short. He's one day short, even if we credit the administrative time. This is why I think we shouldn't do it for the first time on appeal. I mean, he may be one day short, depending on when you decide he got a copy of, he received the administrative decision. But that's, that's, do you know anything about that, what I'm talking about? I believe, and I'm happy to look at it in the records, Your Honor, but I believe the final appeal, the final denial of his appeal from the FDOC Secretary was received at the FCCC on July 2nd, 2014. And that's date stamped by the prison officials when it's received. So I don't have reason to call that into question. But again, to the... I thought he needed 114, I mean, he needed to stay within 113 days, but he was outside of 114. But anyway, that's, I can look into that. But here, here's the Hawthorne case. Hawthorne was 1985, 761 F 2nd, 1514. So part of the problem in this case, we only have one side, we don't have another side in this case. So yeah, and I don't, I don't fault you for not bringing it to the court's attention. But that's part of the problem here is that it wasn't raised in the district court. The whole thing's never been looked at in the district court. And Hawthorne says that the Georgia had a two-year statute of limitations. It was a 1983 case. Georgia allowed tolling. Yes. And guess what we said? Oh, no, tolling's inconsistent with federal policies. Okay. So we got to write around Hawthorne. And we have to kind of find recent Supreme Court precedent that allows us to say it's been abrogated sub saliento. We said, you know, that's, that's a problem there because Georgia allowed tolling. And we said, no, we're going to apply the two-year. We don't allow that tolling. Georgia would allow because there were conflict with the federal policies. And one of the, we looked at compensation, but we also looked at to limit exposure so that federal defendants had a reasonable period of time. They know when they're going to be sued. Okay. So we're not applying this act where we're tolling. And that's what we said in Hawthorne. And it's, it's, let me give you the site. It's a 1985, 761, F3rd, no, F2nd, 1514. So you weren't familiar with that case? I apologize. Oh, I'm sorry. You go ahead. Thank you. I am familiar with that case. I apologize. I was misunderstanding you and I'm aware that in those circumstances that the court didn't make that decision, but I would commend to the court that certain certain developments since the time of that case have overridden that they're controlling or they're controlling the animating principle in that case, your honor first. That's what I'm saying. Hard. I mean, you've got to find Supreme Court has made that 1985 law no longer really good. There's no direct overruling it vis-a-vis Georgia or whatever. There's really no case right in point. It's just, you're going to have to kind of reason your way through it. I think that's probably right, your honor. But I would, and I would know in addition to the Supreme Court briefly, the 1988 a is explicitly clear in the context of 1983 actions. Bivens actions don't arise under 1983. And the 1988 borrowing framework specifies certain titles of the United States code for which for, for which we will borrow state tolling and statutory provisions, but that does not apply to Bivens actions. So I would distinguish that right off the bat and say that we have a controlling statute at issue in this case that didn't control in Hawthorne. The second point I would raise is two Supreme Court cases that I think are at odds with that decision. The first is Tammanio Board of Regents V Tammanio. And that site is. Yeah, I have it. I have it. Is it in your brief? Yes, your honor. And in that case the same, roughly the same thing had happened. The second circuit, both the district court and the second circuit had said that a New York state law that provided for tolling was inconsistent with federal law. And the Supreme Court said, no, go back and try again. We under 1988 defer to defer to state tolling provisions. And so I, that case may not be applicable anymore in that regard. And then the second one, and this gets more to your point about reasoning through cases that aren't aren't exactly on point, but the 2010 Supreme Court decision in Holland V Florida, which actually came out of this circuit, where the court applied equitable tolling in the Edpa context. And, and while I admit that there are certainly differences between the two statutory. And that's a death penalty case. Certainly your honor. But in that case, the Supreme Court did emphasize the need for a statute of limitations that's flexible and responsive to the practicalities of litigating in a federal court. And so I believe that there are lessons that can be learned from, from that decision as well. But by and large, I would say that 1988, a borrowing framework that set out there is the primary difference between a case arriving, rising under Bivens and one cited in Trouville versus Benz in 2002, I'm going to quote from the case, quote, we hold that the PLRAs restrictions on actions brought by prisoners do not apply to civilly committed detainees, close quote. So does the, does the PLRA apply to civil detainees? This is a civil detainee and not a criminal defendant, right? He is a civil detainee at present, your honor. However, and two points on that. One, at the time of the incident that, that, that underlies the 1983 action, he was a prisoner and not a civil detainee. And he was transferred after the action at issue and after his administrative process had been completed. So at the time of the action, he was required to go through the administrative exhaustion period. And in those circumstances it's not clear and it's not clear from the case law that the PLRA would not, would not apply to him simply by fact, by virtue of the fact that he has since become a civil detainee and not a prisoner. Okay. I missed that entirely. So he was in prison when the doctor treated his finger? Yes, your honor. He was, he was incarcerated at the Walton Correctional Institute, which is actually why this case is, it comes out of the Northern District of Florida at the Walton Correctional Institute at the time of Dr. Vilches' allegedly negligent treatment. He completed his prison sentence in May 2015, I believe, and was subsequently transferred to the custody of the Florida Department of Family and Protective Services, which runs the Florida Civil Commitment Center. Is he a civil detainee now? He is still a civil detainee. Yes, your honor. Okay. So go back. I saw he was at Walton, but what's the date of when this incident, when the finger was not properly treated according to his complaint? February 21st and 22nd, 2014, your honor. And so when he filed his complaint on June the 28th of 2018, was he a prisoner or a civil detainee? He's a civil detainee at that point, your honor. So are you saying, and I hadn't thought about this, are you saying, so the exhaustion was against the prison officials then? The exhaustion, where did he file the exhaustion? Where did he file the exhaustion? Was it? Yes. His administrative grievances went to the assistant warden first, that's the informal grievance, then to the warden, which is the formal grievance, and then to a representative of the FDOC secretary. It went through the prison system. Yes, your honor. So this is a prison case, not a civil detainee case, really? The underlying actions are a prison case, yes, your honor. Mr. Barber is no longer a prisoner, but yes, it is. It's subject to and to judge. And the fact that, I don't know the answer to this, but the fact that he's a prisoner, it doesn't change the analysis of the 19, the cause of action remains the same, 1983. And for prisoners who have been injured and bring a claim under 1983, our understanding is the 1988 borrowing framework and the exhaustion requirements still apply. Okay. And so the court determined not just that this complaint was time barred, but because there was also an abuse of the judicial process for untruthfully answering under penalty of perjury, none for the question on the complaint, whether he filed prior lawsuits, which were dismissed as frivolous or malicious or failure to state a claim. And in fact, there were two prior lawsuits, right? That's correct, your honor. And so yes, your honor, and that's correct in all regards. The district court did determine that Mr. Barber did answer those questions incorrectly or falsely, I believe is the language he used. And we don't contest that on appeal. What we do contest is that this court has been quite frankly, exceedingly clear that before a dismissal of any kind will lie under 1915 E2D1, which is at issue here, the court's required to make a finding of bad faith, maliciousness, vexatiousness, something along those lines. He lied to the court on his complaint form. That doesn't demonstrate bad faith. I think calling it a lie even goes beyond what the district court concluded, your honor. The answers are undoubtedly incorrect, but it's not at all clear that Mr. Barber affirmatively lied. But counsel, I mean, he doesn't even try to explain it. The thing that bothers me about it is not so much that there's not a finding of maliciousness, but the court doesn't evaluate whether any lesser sanctions would have sufficed. And because of the way it gets dismissed, it's effectively a dismissal with prejudice. And I think maybe that's the problem here. I don't know if you want to speak to that. I do agree that both of those issues are problematic and independently warrant reversal in addition to what I was just discussing, your honor. The fact that the district court not only didn't consider lesser sanctions, but ultimately only concludes that dismissal with prejudice is want and appropriate sanction suggests that there are other sanctions that may or may have been or were appropriate in these circumstances. And so as a result, I would suggest that that is also a violation. And your honor is correct. To the extent this court does not agree with us on the first issue, a dismissal of any kind here operates as a dismissal with prejudice under the statute of limitations. So I would agree with your honor with regard to both of those issues. I would say, though, that the finding and Judge Wilson and your point is well taken. Comparing it to other findings, the findings from other cases where this court has reversed works unfavorably in the district court's favor in this instance. And I think if you look at the Williams v. Brown decision is probably the one that I would direct this court to. In that instance, the district court concluded that the plaintiff had engaged in a clear and persistent pattern of deceit in court filings, which to me rises and I believe rises well beyond anything that would be classified as the findings in this case. And even in those circumstances and even where that dismissal was without prejudice, this court still reversed the district court and remanded for further proceedings. So I would agree that those are issues that you've identified, your honor. But I do believe that there's a problem with the findings as well. What would have been an appropriate lesser sanction than dismissal? So in this case, and while it would operate the same in this case, dismissal without prejudice would have been a lesser sanction. But I do think there are, there are certainly, the courts have a number of tools at their disposal to control their docket, asking Mr. Barber to refile, to amend his answers, to provide truthful answers. Holding a show cause hearing, among other things, would have been, is a form of sanction. And while we understand that Mr. Barber is incarcerated and did proceed on an IFP status, certainly some contempt of court sanctions may have been appropriate had he, had he still declined to agree with, or declined to amend his filings in those circumstances. And so the district court wasn't without options in this case. And certainly not for someone who was. He's civilly committed. I don't know. Contempt of court. I don't know. Yes, your honor. But even a written show cause order or an order to show written cause with a, with a stern warning that further untruthfulness to the court or lack of candor to the court may be sufficient to dismiss would have been appropriate. I knew he had not told about the prior case against the same doctor. He didn't tell about the prior case against this same man, right? What was the other one he didn't put on the form? In 2017, he filed, he filed what was styled in 1983 action in the middle district of Florida, alleging that the terms of his confinement at the FCCC were unconstitutional, just specifically that he hadn't been giving, been given the necessary hearings at which he could have raised issues regarding his release. Okay. That was a different claim. And then he had filed one against Dr. Vilches. I mean, this is the doctor, Dr. Vilches. He had another case against him. Yes. He had the 2016 against Dr. 2016 action against Dr. Vilches, which was in large part identical to the 2018 claim, but was, and did that one get dismissed for lack of service or did he dismiss it? It was dismissed for lack of service over an objection from Mr. Barber. And, and was it just, I said it was dismissed without prejudice. It was your honor. So he already has had one dismissal without prejudice against the same defendant. Yes, your honor. But, but not for any violations of the Florida civil rights complaint form that are issued. No, I'm just trying to figure out what the lesser sanction would have been because he's already got one case dismissed without prejudice for failure to serve. And then he lies about that. He, whatever, I don't know the lesser sanction. I'm just trying to think about what that would be. I understand your honor. And I would note that sanctioning Mr. Barber moving to immediately to stepped up sanctions in the 2018 action by virtue of the prior dismissal in the 2016 action ignores the fact that Mr. Barber did everything he could to help the district court effectuate service. In that case, Mr. Barber was given IFP status. And while the reasonable actions to serve, to serve the defendant, it wasn't Mr. Mr. Barber's fault that Dr. Vilches couldn't be located in 2016. And so stepping up sanctions in a subsequent action based on a situation in which Mr. Barber did everything up to and including filing public records request to get an address for, for Dr. Vilches. I don't think that's necessarily warranted. But I do think that we are, we're over in, in looking for additional sanctions, what we're essentially discussing would be turning those yes, no questions on the Florida civil rights complaint form into essentially a strict liability, true or false question. If the only thing that the district court needs to show is that the plaintiff falsely responded or incorrectly responded to those questions. And it's particularly in a situation like here, where we have a pro se litigant with significant vision problems, that any one of which could have caused those issues. I think there was reason for further inquiry. And so just immediately defaulting to because the answers were wrong, he must have lied, I think goes beyond what this court has previously required a district courts in these circumstances. I see that I'm well over time. And so unless there are further questions, we would, again, ask the court to reverse the district court on both of these decisions, hold the federal equitable tolling can apply to the period in which a litigant diligently pursues mandatory administrative remedies, and also to reverse the dismissal of this, this matter is an abusive judicial process. All right. So were you appointed by the court to represent Mr. Barker? I was your honor. Well, the court appreciates your service. Thank you. Thank you, Your Honor. I appreciate it. Well, that completes our docket for this morning. This court will be in recess until nine o'clock central time tomorrow morning.